IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT

OF FLORIDA

**10-22393-CV-Huck/White**

cat / div _510/2255/miami-Dade_

Case # _____

Judge _____ Mag _White_

Motn Ifp _N/A_ Fee pd $ _N/A_

Receipt # _____

FREDDY CRESPO,

    Petitioner,

-v-

UNITED STATES OF AMERICA.

    Respondent.

) Case No.

) Crim No. 08-

) 20231

) MOTION TO

) VACATE, SET

) ASIDE, OR

) CORRECT

) SENTENCE

) PURSUANT TO

) 28 U.S.C. §

) 2255

FILED by _LAA_ D.C.

JUL 2 0 2010

STEVEN M LARIMORE
CLERK U S DIST CT
S. D. of FLA - MIAMI

INTRODUCTION

Now comes, Freddy Crespo (hereinafter "Petitioner")

acting pro per, and moves to vacate, set aside, or correct

his sentence under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence
> of a court established by Act of
> Congress claiming the right to be
> released upon the ground that the
> sentence was imposed in violation of
> Constitution or laws of the United
> States... may move the court which im-
> posed the sentence to vacate, set

aside, or correct the sentence..."

The grounds relied upon are set forth in a brief in support of said motion which is attached hereto and incorporated herein by reference.

Respectfully Submitted,

Freddy Crespo

Reg. No. 80320-004

USP Atwater

P.O. Box 019001

Atwater, California 95301

STATEMENT OF THE CASE

In the evening hours of March 12, 2008, the defendant and six others were arrested by agents of the Bureau of Alcholol, Tobacco and Firearms (hereinafter "ATF") at or near an undercover location in Miami-Dade County, Florida on criminal complaint which generally charged them with conspiracy to possess with the intent to distribute cocaine, conspiracy to commit robbery and using and carrying a firearm during and in relation to a crime of violence and a drug trafficking crime.

On March 13, 2008, the defendant made his initial appearance in United States District Court at Miami, Florida. Counsel was appointed and an arraignment and pretrial detention hearing were set. On March 18, 2008, a pretrial detention hearing was held before United States Magistrate Judge Stephen T. Brown and the defendant was ordered detained.

On March 25, 2009, a grand jury sitting in Miami returned a seven-count indictment charging the defendant and six others with conspiracy to violate the Hobbs Act, conspiracy and possession with the intent to distribute cocaine, also firearms violations.

The original indictment charged the defendant and his six codefendants in Count I with from on or about January 31, 2008 to on or about March 12, 2008 with conspiracy to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A). Count II charged all seven defendants that on March 12, 2008 with attempted possession of at least five

kilograms of cocaine on March 12, 2008 in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A). Count III charged all seven defendants from on or about January 31, 2008 to on or about March 12, 2008 with conspiracy to commit robbery by means of taking cocaine from individuals that they believed to be engaged in narcotics trafficking by means of actual or threatened force in violation of 18 U.S.C. § 1951(a). Count V charged all seven defendants with on March 12, 2008 with attempted robbery in violation 18 U.S.C. § 2. Count V charged all seven defendants with on March 12, 2008 with conspiring to carry and possess a firearm in relation to a crime of violence and a drug trafficking crime in violation of 18 U.S.C. § 924(o). All defendants were further charged in Count VI with using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. On March 27, 2008, the defendant pled not guilty to the charges in the indictment.

On May 29, 2008, the trial commenced with jury selection. After adjudging the defendant guilty, the court set sentencing in the case for August 13, 2008. The Defendant, whose combined advisory guideline range at the time of his sentencing, was 360 months to life (Offense Level 37, Criminal History Category VI).

Petitioner Crespo's direct appeal was affirmed on January 19, 2010.

I. PETITIONER CRESPO'S COUNSELS WAS INEFFECTIVE AT SENTENCING AND ON APPEAL WHEN THEY FAILED TO OBJECT AND RAISE WHETHER THE CAREER OFFENDER ENHANCEMENT COULD BE APPLIED TOWARDS CONSPIRACY CHARGES.

On June 4, 2008, after a five day trial the Petitioner was found guilty of Counts, One, Two, Three, Four, Five and Six of a seven-count Indictment charging him with conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 848 (Count One): attempt to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846 (Count Two): and numerous other conspiracy and firearm violations pursuant to 18 U.S.C. § 1951(a) and 18 U.S.C. § 924(c)(1)(A).

Petitioner Crespo's sentence was based on the conspiracy charge in Count One and enhanced pursuant to the career offender enhancement pursuant to § 4B1.1(a). See Presentence Report page 14. Petitioner Crespo contends that his trial and appellate counsel were ineffective in allowing the government to use the career offender enhancement towards his sentence.

The Sentencing Commission explicitly relied on 28 U.S.C. § 994(h) in promulgating § 4B1.1; but § 994(h) does not list conspiracy to commit a controlled substance offense among the crimes that may trigger or serve as prior offenses for career offender status. See United States v. Bellazerius, 24 F.3d 698, 700-02 (5th Cir. 1994). The Sentencing Commission could have exercised its authority under § 994(a)-(f) and defined "controlled substance offenses" to include conspiracies, but that it had not, in fact, done so. See id. at 701-02.

Petitioner Crespo was convicted of conspiracy charges negating the § 4B1.1 enhancement, noting that his drug conspiracy conviction cannot support application of § 4B1.1.

Section § 994(h)(1)(B) provides a narrow list of drug offenses that require the "at or near the maximum" career offender treatment, including importation of certain controlled substances under 21 U.S.C. § 952(a), and manufacturing and distributing on board vessels under 46 U.S.C. § 70503. The statute also omits several significant drug offenses, including the use of a communication facility to facilitate a drug offense under 21 U.S.C. § 843(b) and simple possession under 21 U.S.C. § 844. Perhaps the best example of the statute's precision is the inclusion of only those importation offenses involving the most harmful drugs. Section 994(h) includes 21 U.S.C. § 952(a), which prohibits the importation of schedule I and II controlled substances and narcotic drugs under schedules III, IV and V, but carefully excludes 21 U.S.C. § 952(b), which prohibits the importation of nonnarcotic schedule III, IV and V substances.

Also telling is § 994(h)'s inclusion of a conspiracy offense other than § 846. The statute incorporates all maritime drug offenses "described in... chapter 705 of title 46" § 994(h)(1)(B)f. That chapter includes, among other things, a penalty provision for "attempts and conspiracies"" to manufacture controlled substances on board vessels. 46 U.S.C. § 70506(b). If Congress wanted to include the Controlled Substances Act's analogous § 846 prohibits any attempt or conspiracy "to commit any offense defined in this subchapter," incorporating § 846 into § 994(h) would include

through the back door as the object of a conspiracy
substantive drug offenses, such as simple possession of a
controlled substance in violation of 21 U.S.C. § 844, that
Congress specifically omitted from the "at or near the
maximum" directive.

Based on the deliberate manner in which § 994(h) includes
specific drug offenses but excludes others, Congress did not
intend to include § 846 offenses among those requiring
sentences "at or near" the statutory maximum. Because § 846
is not included in the statutory mandate, Petitioner Crespo's
sentence cannot enhanced pursuant to § 4B1.1. See United
States v. Knox, 573 F.3d 444 (7th Cir. 2009).


A. PETITIONER CRESPO MEETS STRICKLAND v. WASHINGTON'S
PREJUDICE PRONGS.


Petitioner Crespo contends that his counsel rendered
ineffective assistance by failing to challenge the career
offender enhancement at sentencing and on appeal. See
Strickland v. Washington, 466 U.S. 668, 80 L.Ed.2d 674, 104
S.Ct. 2052 (1984). In order to establish ineffective
assistance of his trial counsel, Petitioner Crespo must
satisfy the two-pronged test articulated by the Supreme Court
in Strickland. First, Petitioner Crespo must show that
counsel's performance was deficient. Second, Petitioner
Crespo must demonstrate that this deficient performance
prejudiced his defense. The first prong of the Strickland
test is satisfied if counsel's performance "fell below an
objective standard of reasonableness." Id. at 688. If

"counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," then the second prong is also satisfied. Id. at 687.

An attorney is obligated to provide competent representation to his client. To satisfy the basic obligation, counsel must exercise the "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Model Rules of Professional Conduct Rule 1.1. Thus, an attorney has a duty to adequately examine the law and facts relevant to the representation of his client. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. As the ABA Standards for Criminal Justice provide:

> Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. ABA Standards for Criminal Justice, ch.4, Defense Function 4-4 1 (3d ed. 1993). When representing a criminal client, the obligation to conduct an adequate in-

vestigation will often include
verifying th status of the client's
criminal record, and the failure to do
so may support a finding of ineffec-
tive assistance of counsel. See
Tolliver v. United States, 563 F.3d
1117, 1120-21 (4th Cir. 1977).

In the context of this case, it was critical for
Petitioner Crespo to accurately portray his criminal record.
And given the ease in which such information could have been
obtained, his trial counsel's failure to raise Bellazerius
fell below an objective standard of reasonableness. At
Petitioner Crespo's sentencing his counsel did not file any
objections to him being sentenced as a career offender. Nor
did he put an effort forward in objecting to Petitioner
Crespo being sentenced as a career offender.

Petitioner Crespo also alleges that his appellate counsel
was ineffective for not raising similar case law so that he
would not be sentenced as a career offender.

The entitlement of effective assistance does not end when
the sentence is imposed, but extend to one's first appeal of
right. See Evitts v. Lucey, 469 U.S. 387, 394, 83 L.Ed.2d
821, 105 S.Ct. 830 (1985); Counsel's failure to raise the
Bellazerius argument "fell below an objective standard of
reasonableness." Id. at 301 (quoting Washington, 466 U.S. at
688). Counsel does not need to "raise every nonfrivolous
ground of appeal available." Green v. Johnson, 160 F.3d 1029,
1043 (5th Cir. 1998). Nonetheless, a reasonable attorney has

an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. See Washington, 466 U.S. at 690-91; Childress v. Johnson, 103 F.3d 1221, 1227 (5th Cir. 1997). Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention.

Petitioner Crespo's trial and appellate counsel did not provide objectively reasonable assistance. An objectively reasonable attorney, keeping abreast of legal developments related to his case, as he should, would have discovered Bellazerius and would have noticed that the Fifth Circuit applied Bellazerius in another case decided before Petitioner Crespo was sentenced and before his appellate brief was filed.

To prove prejudice from this deficient performance, Petitioner Crespo must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional error [], the result of the proceeding would have been different." Jones, 163 F.3d at 302 (quoting Washington, 466 U.S. at 694). A reasonable probability is that which renders the proceeding unfair or unreliable, i.e., undermines confidence in its outcome. See id.' Green, 160 F.3d at 1043 (citing Lockhart v. Fretwell, 506 U.S. 364, 369, 122 L.Ed.2d 180, 113 S.Ct. 838 (1993)).


B. PLAIN ERROR.

The court must examine whether the failure to raise the Bellazerius argument undermines the result on direct appeal, making the sentence unfair or unreliable. This requires that

-8-

we counter-factually determine the probable outcome on appeal
had counsel raised the argument. Because counsel did not
challenge the enhancement at trial, we would have reviewed
for plain error (2) that is plain, i.e., clear and obvious,
(3) that affects the defendant's substantial rights even
then, this court should exercise discretion to correct the
error only if leaving it uncorrected seriously would affect
the fairness, integrity, or public reputation of judicial
proceedings. See United States v. Olano, 507 U.S. 725, 731-
36, 123 L.Ed.2d 508, 113 S.Ct. 1770 (1993).

By sentencing Petitioner Crespo as a career offender when
the guidelines exceeded their stated authority by including
conspiracy as a triggering event, the district court relied
on an erroneous provision. If Petitioner Crespo counsel had
objected to the career offender enhancement he would have
been sentenced without it. Thereby warranting a sentence
under the sentencing guidelines for conspiracy to distribute
between 15KG but less than 50KG. Petitioner Crespo contends
that his sentencing guidelines would have been 168-210
months.

The Supreme Court decided in United States v. Knox, 7th
Cir., No. 06-4101 7/20/09 that the career offender
enhancement does not apply to § 846.

Therefore, Petitioner Crespo contends that his counsel
was ineffective for failing to raise United States v.
Bellazerius, 24 F.3d 698 (5th Cir. 1994) causing him
prejudice for being sentenced as a career offender.

C. PETITIONER CRESPO CLAIMS THAT HIS ATTORNEY'S ACTIONS

PREJUDICED HIM PURSUANT TO UNITED STATES v. GLOVER, 531 U.S.
198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001).

The Supreme Court's decision in Glover v. United States,
531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001),
explained that any amount of additional jail time had
significance under Strickland. The Supreme Court further held
that grossly underestimating a defendant's exposure under the
sentencing guidelines constitutes ineffective assistance o
counsel. See Grammas, v. United States, 376 F.3d 433, 439
(5th Cir. 2004) ("adopting the "any amount of jail time"
test).

Petitioner Crespo contends that his case should be
remanded back to the district court without the career
offender enhancement.

He also claims that had his counsel did adequate research
he would not have suffered over a 130 months increase his in
his sentence.

Secondly, the record and the facts also give rise to a
reasonable likelihood that Petitioner Crespo was prejudiced
in another important respect by his trial and appellate
counsel. Petitioner Crespo contends that if he had accepted
the plea offer the government would have requested a downward
departure for accepting responsibility warranting even
further relief.

Thirdly. Petitioner Crespo claims that his attorney
advice prejudiced him because he suffers over 75% additional
jail time in not pleading guilty. See United States v.
Herrera, 412 F.3d 577 (5th Cir. 2005).

Therefore, pursuant to Glover Petitioner Crespo claims that he suffered prejudice due to his sentence being enhanced over 130 months. The error obviously affected Petitioner Crespo's substantial rights. If he was classified as a career offender, the guidelines provided for a sentence of 360 months to life. Under his original base offense level, absent the enhancement, his guidelines imprisonment range would have been 168-210 months. An increase in his sentence from fewer than 14 years to 30 years indisputably and prejudicially affects his rights.

More fundamentally, leaving Petitioner Crespo incarcerated for 30 years when he should have been sentenced to no more than 14 under existing precedent, especially when other cases similar to Petitioner Crespo's have garnered the same sentence, seriously affects the fairness, integrity and public reputation of judicial proceedings by undermining the rule of law. See United States v. Williamson, 183 F.3d 458 (5th Cir. 1999).

II. PETITIONER CRESPO CONTENDS THAT HIS TRIAL AND APPELLATE COUNSEL WERE INEFFECTIVE IN NOT OBJECTING TO HIS PRIOR OFFENSE OF STALKING BEING CLASSIFIED AS A CRIME OF VIOLENCE.

Petitioner Crespo was arrested for Aggravated Stalking and Battery on December 30, 1999. He was given 2 years probation for all counts. (See PSR Exhibit 1 attached) He received a 2 point enhancement pursuant to § 4A1.1, which was one of the crimes the Government used to label him a career offender.

Petitioner Crespo claims that the crime of stalking is not a crime of violence, and therefore he was improperly sentenced as a career offender, because Florida statute could be violated without the use or threatened use of physical force.

Under section § 4B1.1 of the Sentencing Guidelines, a defendant may be sentenced as a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. Petitioner Crespo was over eighteen at the time the alleged Aggravated Stalking took place. At issue is whether his prior felony conviction, namely his aggravated stalking conviction under Florida Statute section 784.048(4), qualifies as a "crime of violence." Petitioner Crespo claims that it does not and that his counsel was ineffective for not objecting to this prior offense being considered a crime of violence.

For these purposes, a "crime of violence" is any offense under federal or state law that is punishable by imprisonment for a term exceeding one year and "(1) has an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a).

"crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as 'crimes of violence' if (A) that offense has an element the use, attempted use, or threatened use of physical force against the person of another.

If the prior conviction is not one of the enumerated offenses, and does not have use (or threatened or attempted use) of force as an element, a categorical approach is taken to determine whether the charged count of conviction, by its nature, presented a serious potential risk of physical injury. United States v. Serna, 309 F.3d 859, 862 (5th Cir. 2002). Under section § 4B1.2(a)(2), an offense should only be considered a crime of violence if, from the face o the indictment, the crime that was charged presents a serious potential risk of physical injury. See, e.g., United States v. Lee, 310 F.3d 787, 790-91 (5th Cir. 2002). Physical injury need not in fact result, but the indictment must make it clear that the crime charged in fact posed the risk. Lee, 310 F.3d at 790-91. "If an indictment is silent as to the offenders actual conduct, we must proceed under the assumption that his conduct constituted the least culpable act satisfying the count of conviction." United States v.

Houston, 243, 246 (5th Cir. 2004).

According to the investigation report (PSR), Petitioner Crespo was arrested in Florida in 1999 and charged with aggravated stalking, Burglary and Tampering with a Witness.

The question here is whether the Florida statute for aggravated stalking requires the use, or threatened or attempted use, of force, or whether the conduct alleged in the indictment presents a serious potential risk of physical injury.

The Florida aggravated stalking statute prohibits:

> "Any person who, after an injunction for protection against repeat violence pursuant to § 784.046, or an injunction for protection against domestic violence, pursuant to § 741.30, or after any other court-imposed prohibition of conduct toward the subject person or that person's property, knowingly, willfully, maliciously, and repeatedly follows or harasses another person commits the offense of aggravated stalking, a felony of the third degree..." Fla.Sta.Ann. § 784.048(4).

Florida Court have interpreted this statute such that the elements of aggravated stalking are "knowledge of an injunction and knowingly, willfully, maliciously, and repeatedly following or harassing the beneficiary of the

injunction." See State v. Johnson, 676 So. 2d 408, 411 (Fla. 1996). In Florida, harassment is defined as "engaging in a course of conduct directed at a specific person that causes substantial emotional distress in such person..." Fla. Stat. Ann. § 784.048(1)(a). On its face, the statute, and in turn the elements of the offense, do not require any use, or threatened or attempted use, of physical force.

The court must therefore look to the indictment to determine whether the crime charged presents a serious potential risk of physical injury to a person. The term "domestic violence," as it is used in the Florida statute, is defined as "any assault, battery, sexual assault, sexual battery, or any criminal offense resulting in physical injury or death of one family or household member by another who is or was residing in the same single dwelling unit." § 741.30(1)(a).

In United States v. Espinoza, 67 Fed. Appx. 252 (5th Cir. 2003) (unpublished), a conviction under Colorado's stalking statute was not a crime of violence under U.S.S.G. § 2L1.2. Although the Colorado stalking statute was for stalking, not aggravated stalking, a person commits the Colorado offences if he "repeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person... in a manner that would cause a reasonable person to suffer serious emotional distress and does not cause that person... to suffer serious emotional distress." Colo. Rev. Stat. § 18-9-111(4)(b)(III)(2003). In that case the government had conceded that the defendant's stalking offense did not include an element that required proof of use,

attempted use, or threatened use of physical force. Therefore, the Fifth Circuit determined that the defendant's stalking conviction did not meet the definition of a crime of violence. It appears that the only other circuit to have addressed the issue of whether a stalking offense is a crime of violence is the Ninth Circuit in United States v. Jones, 231 F.3d 508. 519-20 (9th Cir. 2000), the court analyzed the California stalking statute, which states that "any person who willfully, maliciously, and repeatedly follows or harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family, is "guilty": of stalking. Cal. Penal Code § 646.9(a). In that case, the appellant argued that the element of "threat to safety" did not necessarily involve a threat of physical force as is required under section 4B1.2(a)(1). The district court disagreed, but after the defendant had been sentenced, the California Court of Appeal refused to interpret "safety" to mean physical safety only. Therefore, the Ninth Circuit vacated the sentence, because on its face the statute was not limited to physical injury, and therefore not a crime of violence. Jones, 231 F.3d at 519-20.

A difference between Petitioner Crespo's aggravated stalking offense and those in Jones and Espinoza is that Petitioner Crespo's indictment alleged that an injunction had been previously issued against him under the domestic violence law.

On its face, the aggravated stalking statute can be violated without the use or threatened use of physical force,

and the additional information provided in the aggravated
stalking indictment about Petitioner Crespo's underlying
injunction does not allege conduct which, by its nature,
poses a serious potential risk of physical injury.

Therefore, Petitioner Crespo's 1999 aggravated stalking
conviction (which is not one of the named offenses in section
§ 4B1.2) does not have as one of its elements the use,
attempted use or threatened use of physical force, and that
the conduct set forth in the relevant count of the indictment
by its nature does not involve a serious potential risk of
physical injury to another. This conclusion clearly and
plainly follows from the terms of section § 4B1,2(a), the
wording of the Florida statute and the indictment, and this
court jurisprudence construing section § 4B1.2.

Therefore, it was plain error to sentence Petitioner
Crespo as a career offender, because he did not have two
prior felony convictions of either a crime of violence or a
controlled substance offense. See United States v.
Insaulgarat, 378 F.3d 456 (5th Cir. 2004).


D. PETITIONER CRESPO'S SUFFERED PREJUDICE DUE TO HIS TRIAL
AND APPELLATE COUNSEL NOT OBJECTING TO HIS AGGRAVATED
STALKING OFFENSE BEING CLASSIFIED AS A FELONY.


To prevail on an ineffective assistance of counsel claim,
a petitioner must establish that his trial counsel's
performance was deficient and that the deficient performance
prejudiced his defense. Strickland v. Washington, 466 U.S.
668, 700, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984). The

"prejudice" prong of Strickland requires that the petitioner demonstrate the existence of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. 668, 694, 80 L.Ed.2d 674, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In this case, Petitioner Crespo alleges that had his counsel read the State Court Indictment and noticed the elements of violence are not within the Aggravated Stalking charge, Petitioner Crespo would not have been sentenced as a career offender. Therefore, it goes to say that Petitioner Crespo would have faced a 168 month sentence. Petitioner Crespo contends his attorneys conduct "fell below an objective standard of reasonableness.:" A reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. See Washington, 466 U.S. at 690-91.

In this case, if counsel would have diligently read the statutes which the government relied on in sentencing Petitioner Crespo as a career offender there is a likelihood that he would not have been sentenced as a career offender. See Childress v. Johnson, 103 F.3d 1221, 1227 (5th Cir. 1997).

Accordingly, this Court is obliged to remand Petitioner Crespo's case back for ineffective assistance of counsel without the career offender enhancement. See United States v. Russell, 221 F.3d 617 (4th Cir. 2000).

III. PETITIONER CRESPO CONTENDS THAT HIS TRIAL AND APPELLATE
COUNSEL WAS INEFFECTIVE FOR NOT RAISING AMENDMENT 709 AT
SENTENCING AND ON DIRECT APPEAL WHICH WOULD HAVE MADE HIS
GUIDELINE RANGE BETWEEN 14-17 YEARS.

Petitioner Crespo was indicted in 2008, almost a year
after Amendment 709 was enacted.

On May 1, 2007, the Sentencing Commission proposed an
amendment to the guideline restating the rules for
determining when multiple crimes are counted as one for
criminal history purposes. The Amendment, proposed in May
2007, was set to become effective November 1, 2007, unless
Congress acted to prevent its adoption. Amendment 709.

Under the proposed amendment, Petitioner Crespo's prior
offenses for Battery and Stalking should be consolidated and
no longer counted as separate convictions.

Petitioner Crespo's appeal to the Eleventh Circuit Court
of Appeals was decided on January 19, 2010, See United States
v. Crespo, D.C. Docket No. 08-20231-CR-PCH.

The Sentencing Commission did not make Amendment 709
retroactive. But Petitioner Crespo's counsel could have
submitted Amendment 709 to the District Court and his
Appellate Counsel could have submitted it to the Eleventh
Circuit Court of Appeals.

The Commission said that a conflict existed as to the
interpretation of the earlier guideline and, in lieu of
clarification in favor of one view or the other, it adopted a
new blanket rule that elimantes the ambiguity by going beyond
any circuit's reading of the previous rule in a manner

-19-

favorable to the defendant.

The Sentencing Commission propounded Amendment 709 for the express purpose of addressing the inconsistency and confusion that had been generated by the "related cases" doctrine. The Amendment basically provided that all cases sentenced on a single day were "related" for criminal-history purposes, unless the underlying offenses were separated by an intervening arrest. More specifically, the Amendment struck the then-existing version of § 4A1.2(a)(2) in its entirety and substituted the following:

> If the defendant has multiple prior
> sentences, determine whether those
> sentences are counted separately or
> as a single sentence. Prior sentences
> always are counted separately if the
> sentences were imposed for offenses
> that were separated by an intervening
> arrest (i.e., the defendant is arres-
> ted for the first offense prior to
> committing the second offense). If
> there is no intervening arrest, prior
> sentences are counted separately un-
> less (A) the sentences resulted from
> offenses contained in the same charg-
> ing instrument; or (B) the sentences
> were imposed on the same day. Count
> any prior sentence covered by (A) or
> (B) as a single sentence...

See U.S.S.G. app.C, supp. (2007).

Petitioner Crespo's alleged prior convictions were consolidated at sentencing, which would have made his prior sentences applicable.

Petitioner Crespo's alleged prior convictions were consolidated. (See Exhibit B PSR pages 15-16) Petitioner Crespo was arrested on 7/15/98 and charged with False Imprisonment and Battery, Docket Number #F98024019. He was sentenced to 2 years probation, with Count 2, suspended entry of sentence. Petitioner Crespo's probation was revoked and he was given 364 days in jail on 6/6/01. As stated the Docket Entry is #F98024019.

On 12/30/99, Petitioner Crespo was arrested for Aggravated Stalking among other charges. He received 270 days in jail along with 2 years of probation. The Docket Entry on this case is: #F99043709. However, these counts and probation violations were ran concurrent with Docket Entry #F98024019 (See PSR page 16). Both of these sentences were imposed on 6/601, therefore making these charges one conviction instead of two. See United States v. Horn, 509 F.Supp.2d 976 (M.D. Tenn. 2008).

Petitioner Crespo claims, that had his counsel and Appellate Counsel submitted Amendment 709 to the court and appellate counsel, there was the possibility that the court would have remanded his sentence to the district court for resentencing. See United States v. Godin, 522 F.3d 133 (1st Cir. 2008).

In Godin, the defendant was sentenced to 262 months. Applying the 2005 sentencing guidelines, the district court found that Godin was a career offender because her crime was

a crime of violence, who was at least eighteen years old at the time of the offense, and she had two prior offenses. As a career offender on multiple counts of 18 U.S.C. § 924(c), her guidelines range was 262-327 months. U.S.S.G. § 4B1.1(c)(3).

On appeal, Godin challenged inter alia the district court's determination that she was a career offender. She argued that her two prior crimes of violence-the burglaries should be counted as one because they were "related sentences" as defined in the guidelines. U.S.S.G. §§ 4B1.3(c), 4A1.2(a)(2) & cmt. n.3 (2005). The Court rejected Godin's argument, stating that the two burglaries were not part of a "single common scheme or plan," and although she was sentenced for two burglaries on the same day, the two crimes had not been "consolidate for trial or sentencing," as the court had previously interpreted that phrase. Godin I, 489 F.3d at 435-36.

While Godin's appeal was pending, the Sentencing Commission proposed Amendment 709 to the guidelines; restating the rules for determining when multiple crimes are counted as one for criminal history purposes.

Following the Court's June 2007 affirmance of her sentence, Godin I, 489 F.3d at 438. Godin petitioned for rehearing, asking the court to consider the impact of the proposed amendment. The government asked that a ruling be delayed until it was decided if the amendment would become effective on November 1, 2007.

Petitioner Crespo contends like Godin that at the time the Amendment went into effect his direct appeal had not been filed. Furthermore, before he was sentenced his trial counsel

could have proposed Amendment 709 so that his prior offenses could be counted as one. Which thus would have effectively made a difference of 192 months without the career offender enhancement. Thus causing prejudice to Petitioner Crespo's case, see Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

Petitioner Crespo claims that had his counsel raised Amendment 709, there was probability the result of his sentencing would have been different, Wise b. Bowersox, 136 F.3d 1197, 1206 (8th Cir. 1998); Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

For further support, Petitioner Crespo relies on United States v. Ahrendt, 560 F.3d 69 (1st Cir. 2009), in which the First Circuit remanded back to the district court to decide if the court would impose relief for sentences that were consolidated.

Petitioner Crespo claims that his attorney's should have raised Amendment 709 because his conviction listed under 49 and 50 respectively were consolidated for sentencing purposes. Petitioner Crespo told his attorney this information. As well as, he did not serve different sentences for these convictions.

For these reasons, Petitioner Crespo respectfully asks this Court to be resentenced pursuant to Amendment 709.


IV. PETITIONER CRESPO CLAIMS THAT HIS TRIAL COUNSEL WAS INEFFECTIVE AT THE PLEA BARGAINING STAGES BY TELLING HIM THAT HE COULD GET NO MORE THAN TEN YEARS. AND FAILING TO SUBMIT THE FIREARM CHARGE TO TRIAL.

The principles governing ineffective assistance of counsel have been addressed in this motion. A defendant has the Sixth Amendment right not just to counsel, but to "reasonably effective" assistance of counsel. Strickland v. Washington, 466 U.S. 668, 687 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To gain relief for a violation of this right, a defendant must show both professional conduct and, in most cases,, prejudice as a result.

Petitioner Crespo alleges that his trial counsel failed to explain that he might be classified as a career offender. Petitioner Crespo claims that had he been told of his true sentence exposure, he would have accepted the government's plea bargain offer and received a 120 month term and to trial for the firearm offense which was the discrepancy at his plea hearing, instead of receiving the 420 month sentence imposed upon him.

Under the career offender act Petitioner Crespo's sentence was guided by § 4B1.1(b) offense level 37 category VI for two prior convictions for a crime of violence.

In Petitioner Crespo's case, his attorney told him that his guideline range was 168-210 months. Considering the governments offer of 180 months to all charges, Petitioner Crespo went to trial believing that he could not be sentenced to more than 120 months.

Petitioner Crespo states that Mr. Mercado did not explain to him or discuss whether the court could sentence him as a career offender. Nor did Mr. Mercado tell him after trial. Even after trial Mr. Mercado was telling Petitioner Crespo that he could convince the Court to give him 180 month

sentence. Petitioner Crespo contends that he would have
accepted the governments offer of 120 months and went to
trial for the § 924(c) violation had he known he was facing
the possibility of 420 months for the drugs and firearm, had
he been advised he would be sentenced as a career offender.
In this case, Petitioner Crespo states that the advise he
received was so incorrect and so insufficient that it
undermined his ability to make an intelligent decision about
whether to accept the offer.

Petitioner Crespo states that his case resembles Caruso
v. Zelinsky, 689 F.2d 435 (3d Cir. 1982). Caruso alleged that
the county prosecutor had offered his trial counsel a plea
bargain whereby in exchange for a guilty plea on one murder
charge, all other charges would be dropped. Caruso claimed
that his counsel never communicated the offer to him, and
that, as a result, he stood trial and received a mandatory
life sentence instead of the lesser sentence that he would
have received under the plea bargain. Id. at 437. The Court
held that the plea bargain stage was a critical stage at
which the right to effective assistance of counsel attaches,
and concluded the allegations stated a Sixth Amendment claim.
Id. at 437-38.

The Sentencing Guidelines have become a critical, and in
many cases, such as Petitioner Crespo's dominant facet of
federal criminal proceedings, that his counsel unfamiliarity
with the structure and basic content of the Guidelines
(including the definition and implications of career criminal
act) renders ineffective assistance of counsel). See United
States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992).

Petitioner Crespo contends that he has a right to make a reasonably informed decision whether to accept a plea offer. See Hill v. Lockhart, 474 U.S. 52, 56-57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (voluntariness of guilty plea depends on adequacy of counsel's advise); Von Moltke v. Giles, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948) ("Prior to trial an accused in entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.'").

E. PREJUDICE

To justify relief Petitioner Crespo must prove prejudice. The question becomes whether Petitioner Crespo alleges sufficient prejudice, which requires consideration of whether Petitioner Crespo would have accepted the alleged plea offer.

Petitioner Crespo was sentenced as a Career Offender. If not for this enhancement he would have faced 168 months for the narcotic and firearm conviction.

Had Petitioner Crespo understood and be told correctly that he would be sentenced as a career offender he would have taken the governments offer. He would have received a two-three reduction for acceptance of responsibility, if he accepted a plea offer, including a substantially lower sentence.

Second, the record and the facts also give rise to a reasonable likelihood that Petitioner Crespo was prejudiced in another important respect by his former attorney's alleged

failure to give him proper advice about the plea offer. Petitioner Crespo contends that if he had accepted the plea offer the government would not have filed enhanced penalties after the offer had been accepted, it would have been precluded from doing so after the plea agreement. See United States v. Blaylock, 20 F.3d 1458, 1467 (9th Cir. 1994).

Thirdly, Petitioner Crespo claims that his attorney advice prejudiced him because he suffers over 100% additional jail time in not pleading guilty. See United States v. Herrera, 412 F.3d 577 (5th Cir. 2005).

The Supreme Court's decision in Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001), explained that any amount of additional jail time had significance under Strickland. The Supreme Court further held that grossly underestimating a defendant's exposure under the sentencing guidelines constitutes ineffective assistance of counsel. See Grammas v. United States, 376 F.3d 433, 439 (5th Cir. 2004) ("adopting the "any amount of jail time" test).

Petitioner Crespo claims that his case should be remanded back to the district court for new negotiations. If a defendant is told the maximum possible sentence was ten years and then the court imposed a sentence of fifteen years based on ACCA, thus a defendant would have been sorely misled and would have a ground for reversal. See United States v. Gonzalez, 420 F.3d 111, 132 (2nd Cir. 2004).

V. PETITIONER CRESPO CLAIMS THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO HIS TRIAL COUNSEL NOT OPPOSING HIS PRIOR OFFENSE OF AGGRAVATED BATTERY AND NOT HAVING AN

INTERPRETER PURSUANT TO GIDEON v. WAINWRIGHT, 9 L.Ed.2d 799 (1963).

Petitioner Crespo was awarded 2 points for an Aggravated Battery charge on 5/9/03. This offense was used in making him a career offender.

Petitioner Crespo contends that he was not afforded counsel during these proceedings nor did he waive his right to counsel.

The Supreme Court determined that a conviction obtained without counsel or a waiver of counsel was unconstitutional and improperly relied upon in a federal sentencing. See Burgett v. Texas, 389 U.S. 109, 114-115, 88 S.Ct. 258, 261-262, 19 L.Ed.2d 319 (1967) (holding that use of prior conviction, where there was no representation by counsel or waiver of counsel, could not be used for sentence enhancement under Gideon); United States v. Tucker, 404 U.S. 443, 449, 92 S.Ct. 589, 593, 30 L.Ed.2d 592 (1972) (citing Gideon and Burgett); Custiss v. United States, 511 U.S. 485, 493-496, 114 S.Ct. 1732-38, 128 L.Ed.2d 517 (1994) (holding that defendant may not challenge validity of prior conviction at federal sentencing, with exception of conviction obtained in violation of right to counsel).

In this case, Petitioner Crespo was arrested for Aggravated Battery on 5/9/03. While waiting disposition on this case in Hialeah, Florida, Petitioner Crespo sat in the county jail without going in front of a Judge. Nor did he receive assistance of counsel. From the beginning of the case, Petitioner Crespo was originally charged with armed

home invasion robbery and kidnapping with a weapon.
Petitioner Crespo sat in the county jail from May 9, 2003, to
March 4, 2005 and never went in front of a Judge. Thereby, he
did not receive assistance of counsel. Pursuant to Gideon,
Petitioner Crespo contends that his trail attorney committed
error in allowing the government to impose a career offender
enhancement without putting forth his argument that he never
received assistance of counsel for this charge.

Petitioner Crespo claims that his attorney Mr. Mercado
that he only sat in the Hialeah jail without seeing a Judge
for this charge nor did he receive assistance of counsel. He
also told his attorney Mr. Mercado that he didn't have the
assistance of an interpreter.

Therefore, counsel was ineffective in not opposing this
charge at sentencing rendering him ineffective assistance of
counsel. See United States v. Tucker, 404 U.S. 443, 448-49,
92 S.Ct. 589, 592-93, 30 L.Ed.2d 592 (1972) (remanding case
to district court for resentencing where court considered
felony convictions obtained in violation of right to counsel
in determining sentence. United States v. Roman, 989 F.2d
1117, 1119 (11th Cir. 1993) (relying on Tucker and noting
that "the Constitution bars federal courts from using certain
kinds of convictions at sentencing").

Therefore, Petitioner Crespo contends that his case
should be remanded back to the district court without the
career offender enhancement.


VI. PETITIONER CRESPO RELIES ON UNITED STATES v. JOHNSON, 08-
6925, 86 Crim. L. Rep. March 3, 2010, STATING THAT HIS PRIOR

BATTERY OFFENSES DO NOT HAVE "PHYSICAL FORCE" AS AN ELEMENT
AND THUS DO NOT CONSTITUTE A "VIOLENT FELONY" FOR PURPOSES OF
THE CAREER OFFENDER ENHANCEMENT.

Petitioner Crespo was convicted for several battery
offenses. (See PSR pages 15-18.) Pursuant to these
convictions Petitioner Crespo was deemed a career offender.

Specifically Petitioner Crespo was placed on probation
for Battery on 7/15/98 and attributed 3 points for this
conviction pursuant to § 4A1.1(a) and on 12/30/99 and
attributed 2 points pursuant to § 4A1.1(b). He was also
sentenced for Aggravated Battery on 5/9/03 and attributed 2
points pursuant to § 4A1.1(b). These two convictions were
major factors in making Petitioner Crespo a career offender.

On March 2, 2010, the Supreme Court issued its opinion in
No. 08-6925, Johnson v. United States. The Court held that
Florida's felony battery statute, which requires the "actual
and intentional touching" of another person does not have the
use of "physical force" as an element and thus does not
constitute a "violent felony" for purposes of the federal
Armed Career Criminal Act.

The Court turned to both the ordinary meaning of
"physical force". Relying on dictionaries, the Court
concluded that the term "force" contemplates strength or
energy, violence, and pressure directed against a person-that
is, a degree of power not satisfied by the merest touching.

Petitioner Johnson pleaded guilty to possession of
ammunition by a convicted felon. 18 U.S.C. § 922(g)(1). Among
the three prior felony convictions the Government proffered

was Johnson's 2003 Florida conviction for battery, which ordinarily is a first-degree misdemeanor, but was a felony conviction for Johnson because he had previously been convicted of another battery, Fla. Stat. § 784.03(2).

The Supreme Court stated that nothing in the record permitted the district court to conclude that Johnson's 2003 conviction rested upon the "striking" or "[i]ntentionally caus[ing] bodily harm" elements of the offense. Thus, being the Florida felony offense of battery by "[a]ctually and intentionally touch[ing]" another person does not have "as an element the use... of physical force against the person of another," Petitioner Crespo's prior battery convictions cannot be held convictions under Johnson.

Petitioner Crespo argues that Johnson is applicable to his section § 2255 case. See Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999).

Petitioner Crespo argues that the Johnson opinion is similar to Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). That case involved 18 U.S.C. § 924(c)(1), which punishes anyone who uses or carries a firearm during or in relation to a drug trafficking crime. The Supreme Court in Bailey interpreted the use prong of the statute narrowly to require active employment of the firearm, an interpretation different from the one that had been adopted by a number of federal appeals courts. As as result, prisoners who had been convicted under an erroneous interpretation of § 924(c)(1), or who thought they had been, collaterally attacked their convictions as inconsistent with the Bailey decision.

Various courts gave petitioners a right to file § 2255s petitions in light of Bailey being that Bailey interpreted the statute. Petitioner Crespo contends that Johnson interpreted Flordia's battery statute rendering that decision retroactively applicable to section § 2255. See Reyes-Requena v. United States, 243 F.3d 893 (5th Cir. 2001).

VII. PETITIONER CRESPO'S CONVICTION WERE OBTAINED IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION WHEN DEFENSE ATTORNEY IVAN MERCADO FAILED TO CHALLENGE FAILED TO CHALLENGE, EXCLUDE, AND/OR PRESERVE FOR APPEAL HEARSAY EVIDENCE PRESENTED FROM AGENT ERIK ESPINOSA CONCERNING THE CONFIDENTIAL INFORMANT IN LIGHT OF STANDARDS SET FORTH IN CRAWFORD AND LILLY.

The Sixth Amendment's Confrontation Clause provides a criminal defendant the right to directly encounter hostile witnesses. See Maryland v. Craig, 497 U.S. 836, 846 (1990). (Face to face confrontation enhances the accuracy of fact finding by reducing the risk that a witness wrongfully implicate an innocent person"); Coy v. Iowa, 487 U.S. 1012, 1019 (1988) ("It is always more difficult to tell a lie about a person to his face' than behind his back"). It also provides the right to cross-examine adverse witnesses, and the right to be present at any stage of trial that would enable the defendant to effectively cross-examine adverse witnesses. By guaranteeing those rights, the Confrontation serves to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing "in

an adversarial proceeding. See Kentucky v. Stiner, 482 U.S. 730, 737 (1987) (Confrontation right designed to promote truth-finding function of trial). The admission of hearsay evidence, against a criminal defendant implicates the Sixth Amendment because the defendant is not afforded the opportunity to confront the out-of-court declarant.

In Lilly v. Virginia, 527 U.S. 116, 124, 144 L.Ed.2d 117, 119 S.Ct. 1887 (1997(, the Supreme Court held:

An accused's rights under the Federal Constitution's Sixth Amendment, to be confronted with the witnesses against him is violated where the entire confession of the accused's non-testifying alleged accomplice-which confession contain some statements against the accomplice's penal interest and others that inculpate the accused-is admitted into evidence at the accused's criminal trial.

In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004), the Supreme Court held that the Confrontation clause bars the admission at trial of the testimonial statements of a witness who is absent from trial, unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine. Id. The Court noted however, that the Confrontation Clause must be interpreted with an eye toward the principal evil at which it was directed, namely the use of "ex parte examinations as evidence against the accused" Id. at 363. The court explained that "whatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury or at a former trial; and to police interrogations. Id. at 1374.

-33-

In the instant case ATF Agent Erik Espinosa testimony was based on information obtained from a confidential informant. (See Trial Tr. pages 129-180.)

Indeed, Agent Espinosa information obtained from the confidential informant and used during his grand jury and trial testimony was the key evidence to support the charges in having Petitioner Crespo indicted and convicted at trial.

Agent Espinosa's testimony was based on information from the confidential informant which lead up to the investigation by the ATF. (See Trial Tr. page 126);

> A. I was called by the case agents to
> act in an undercover role. So we met
> with the confidential informant to
> debrief him or try to find out what
> information he had.

Which means that the ATF had no information through their own means. They were relying on the information that confidential information brought to them.

Indeed, Agents Espinosa's trial testimony added highly prejudicial effect upon the jury in the instant case because Petitioner Crespo was not allowed to cross examine the confidential informant.

Furthermore, Petitioner Crespo contends that defense counsel in the instant case did not "exercise reasonable diligence" because it did not begin its efforts to produce the confidential informant as a witness. Moreover, the Government failed to produce the confidential informant. Petitioner contends that the prosecution was "dilatory" in

that it made no efforts to secure the confidential informant. The prosecution as well as defense counsel failed to take steps to prevent the confidential informant from absenting himself from the proceeding held in the instant case. In Barber v. Page, 390 U.S. 719, 724, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the Supreme Court held that a witness is not "unavailable" for purposes of the Confrontation Clause" unless the prosecutorial authorities have made a good-faith effort to obtain the witness presence at trial." Thus, this was not done in the instant case.

Exposure of a witness motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

Defense counsel must be able "to make a record from which to argue why [a witness' might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." Id. at 318. He must be "permitted to expose to the jury the fact from which jurors, as the sole trier of act and credibility, could appropriately draw inferences relating to the reliability of the witness." Id.

Cross examination is constitutionally adequate as long as a defendant is permitted to elicit sufficient information (1) the jury can gauge credibility, motive and bias and (2) his counsel is able to argue to the jury how the witness might have been biased. United States v. Van Dorn, 925 F.2d 1331, 1335 (11th Cir. 1991).

In this case counsel had to allude to the fact that he did not know how much the confidential informant was being

paid in putting this operation together. (See Trial Tr. Page 14 on 5/03/08).

Petitioner Crespo contends that his attorney Mr. Mercado is an experienced lawyer who should have been clearly aware of the Supreme Court's holding in Lilly v. Virginia and Crawford v. Washington, in which could have supported his challenge on the Hearsay Evidence and Confrontation Violation. Accordingly, Petitioner Crespo asks that his § 2255 motion be granted for a new trial.

VIII. PETITIONER CRESPO RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL IVAN MERCADO FAILED TO INTERVIEW THE CONFIDENTIAL INFORMANT.

The American Bar Association defines the duty to investigate as follows:

> It is the duty of the lawyer to con-
> duct a prompt investigation of the
> circumstances of the case and to ex-
> plore all avenues leading to the facts
> relevant to the merits of the case and
> the penalty in the event of con-
> viction. The investigation should
> always include efforts to secure in-
> formation in the possession of the
> prosecution and law enforcement
> authorities. See A.B.A. Standard 441.

In the instant case the record is clear that attorney Ivan Mercado failed to interview the confidential informant

allowing the government to violate his Sixth Amendment right.

Petitioner Crespo argues that his counsel should at the minimal attempted to contact the confidential informant in this case. Defense counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such a decision could be made. Kenley v. Armontrout, 937 F.2d 1298, 1308 (8th Cir. 1991); Marcum v. Luebbers, 2007 U.S. App. Lexis 28297, 2007 WL 4270781 at *15 (8th Cir. 2007) ("[C]ounsel who conducted no discovery could not have known what the relative importance of the different kinds of evidence would be).

Defense counsel Ivan Mercado cannot claim that making an effort to obtain those potential witnesses version of the facts would have been inconsistent with his trial strategy. There is nothing inconsistent between challenging the credibility of the Government's case and point out the weakness in the government's case. See Morrow v. Parratt, 574 F.2d 411 (8th Cir. 1978) (The prisoner was entitled to habeas relief on the grounds that his trial attorney failed to adequately investigate the facts or interview witnesses).

Petitioner Crespo respectfully asks this court for a new trial or evidentiary hearing to determine whether his attorney violated his Sixth Amendment right due to ineffective assistance of counsel.

IX. PETITIONER CRESPO CONTENDS THAT THE CUMULATIVE EFFECT OF ERRORS DEPRIVED HIM OF DUE PROCESS.

In Walker v. Engle, 703 F.3d 959 (6th Cir. 1983), the court ruled in a habeas corpus action that the cumulative effect of errors deprived the defendant of due process. Id. at 968-969.

Petitioner Crespo contends that the cumulative effect of errors in the instant case deprived him of due process. Thereby relief should be granted. Maglaya v. Buchkoe, 515 F.2d 265 (6th Cir.), cert. denied, 423 U.S. 931, 46 L.Ed.2d 260, 96 S.Ct. 282 (1975).

### CONCLUSION

Based on the foregoing, Petitioner Crespo requests a new trial, resentencing or an evidentiary hearing for the issues listed in this § 2255 petition.

### CERTIFICATE OF SERVICE

I, Freddy Crespo hereby certify that I have served a true and correct copy of the following. Two copies of the said 28 U.S.C. § 2255 motion to the United States District Court for the Southern District of Florida at:

400 North Miami Avenue
Miami, FL 33128

One copy to the United States Attorney Daniel Rashbaum at:

99 NE 4th Street
Miami, FL 33132

I Freddy Crespo declare under the penalty of perjury that the said motion was delivered to prison authorities for forwarding, Houston v. Lack, 101 L.Ed.2d 245 (1988), upon the

listed parties, by placing the motions in a sealed prepaid envelope.

Respectfully Submitted,

Freddy Crespo #

United States Penitentiary

P.O. Box 019001

Atwater, California 95301

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudications

46.  None

### Adult Criminal Convictions

| | Date of Arrest | Charge/Agency | Date Sentence Imposed/ Disposition | Guideline/ Points |
|---|---|---|---|---|
| 47. | 2/26/98 (age 24) | Knowingly Driving with a Suspended License, Miami-Dade Police Dept., Miami, FL | Dkt. #044824Z 2/26/98 Convicted | 4A1.2(c)(1) |

**0**

The circumstances for this case are not available. Jail records reflect the defendant was booked February 26, 1998, and released February 27, 1998.

| | Date of Arrest | Charge/Agency | Date Sentence Imposed/ Disposition | Guideline/ Points |
|---|---|---|---|---|
| 48. | 5/9/98 (age 24) | Knowingly Driving with a Suspended License, Miami-Dade Police Dept., Miami, FL | Dkt. #317847Z 5/12/98: Adjudication withheld; 4 days jail | 4A1.2(c)(1) |

**0**

The circumstances for this case are not available. Jail records reflect the defendant was booked May 9, 1998, and released May 12, 1998.

| | Date of Arrest | Charge/Agency | Date Sentence Imposed/ Disposition | Guideline/ Points |
|---|---|---|---|---|
| 49. | 7/15/98 (age 25) | Ct. 1: False Imprisonment, Ct. 2: Battery, Hialeah Police Dept., Hialeah, FL | Dkt. #F98024019 8/5/98: Ct. 1, 2 years probation; Ct. 2, suspended entry of sentence 3/29/00: Probation revoked; Ct. 1, 270 days jail followed by 2 years probation; Ct. 2, SES 8/10/00: Released from jail 6/6/01: Probation revoked; 364 days jail 3/15/02: Released from jail | 4A1.1(a) |

**3**

According to court documents, on July 15, 1998, Freddy Crespo became upset with Migdalia Borrego, his live-in girlfriend of approximately two years, when she

asked him to take her to work. He pulled her hair and hit her on the back of the neck several times and then would not let her leave the apartment for approximately 45 minutes. Crespo reportedly told Ms. Borrego that if she called the police and caused him any problem that he would kill her. Crespo then gave Ms. Borrego the keys to her car, allowed her to leave at which time she fled, calling the police. Ms. Borrego reported past domestic violence incidents that included threatening her multiple times with a kitchen knife and one beating, when she suffered a broken nose.

State of Florida probation records reflect the defendant submitted a urine specimen on January 13, 1999, that tested positive for the presence of cocaine. On March 29, 2000, the defendant's term of probation was revoked for his failure to pay costs of supervision and court costs, committing a new offense of aggravated stalking on October 30, 1999 (Dkt. #F99043709), failure to complete the domestic intervention program and failure to attend the jobs program. The defendant's second term of probation was revoked on June 6, 2001, for failing to pay the costs of supervision and court costs, and by committing a new offense of petit larceny and theft on October 7, 2000, with an arrest on February 17, 2001 for failure to appear (Dkt. #B00061124).

Jail records reflect dates of incarceration were July 15, 1998, to August 5, 1998; December 30, 1999, to August 10, 2000; and May 25, 2001, to March 15, 2002.

| 50. | 12/30/99 (age 26) | Ct. 1: Aggravated Stalking, Ct. 2: Battery, Ct. 3: Burglary w/Assault or Battery, Ct. 4: Tampering w/Witness, Victim or Informant, Ct. 5: Petit Theft, Hialeah Police Dept., Hialeah, FL | Dkt. #F99043709 3/29/00: Cts. 1, 3 & 4, 270 days jail to be followed by 2 years probation; Cts. 2 & 5, SES, concurrent w/F98024019 6/6/01: Probation revoked, 364 days jail, concurrent and concurrent w/F98024019 3/15/02: Released from jail | 4A1.1(b) |

According to the police reports, the defendant and victim, Migdalia Borrego, had been separated for approximately one year. As reported in police case number 99-46074, on October 30, 1999, at approximately 4:00 PM, the defendant attempted to make contact with the victim by beeper, but she did not respond. When the victim attempted to use her home telephone, she discovered it was not working and walked to a pay telephone where she called the telephone company to report the problem. As she was on the telephone with the telephone company, the defendant drove up in a white truck and demanded to know with whom she was



51. | 10/7/00 (age 27) | Petit Larceny, Theft, Hialeah Police Dept., Hialeah, FL | Dkt. #B00061124 8/24/01: Time served | 4A1.1(c)

1

The circumstances for this case are not available. No booking appears of record for October 7, 2000; therefore, the defendant may have signed a "promise to appear." On February 17, 2001, the defendant was arrested on an outstanding warrant (issued December 12, 2000) in this case, when he was observed in Hialeah, sleeping inside a parked vehicle. He was released the same day. He was arrested again on October 9, 2002, on another outstanding warrant issued in this case a collections matter, and was released October 10, 2002.

52. | 5/9/03 (age 29) | Aggravated Battery w/Deadly Weapon, Hialeah Police Dept., Hialeah, FL | Dkt. #F03013209 2/18/05: 366 days jail (time served) | 4A1.1(b)

2

According to the arrest report, on May 2, 2003, at approximately 10:30 AM, Freddy Crespo knocked on the victim's front door and asked for water. The victim, who had seen the defendant in the past at a cafeteria, told him he would get him some water. When the victim went to get Crespo the water, Crespo reached through the bars of the front gate, unlocked the gate and entered the victim's home with two unknown codefendants. A codefendant pistol-whipped the victim in the head, while Crespo told the victim to tell him where the money was. Crespo and the other suspects tied the victim with duct tape (over his eyes, hands together and legs together) and then struck the victim with the firearm and threatened to cut his throat. The victim told Crespo where he kept some money in the apartment and Crespo took approximately $4,200, a mobile telephone and the victim's checkbook. The defendant and the other suspects left the apartment; the victim was able to get his legs loose and get to a neighbor's apartment.

The defendant was originally charged with armed home invasion robbery and kidnapping with a weapon. As set forth in the judgment, the defendant was adjudicated a habitual violent felony offender and was sentenced to an extended term in accordance with Florida Statutes. He was given credit for 652 days time incarcerated prior to imposition of this sentence. Jail records reflect the defendant was incarcerated from May 9, 2003, to March 4, 2005.

FReddy Crespo #80320-004
United States
U.S Penitentiary
P.o Box 019001
Atwater, CA.
-95301